# Ida Barkdoll, Plff. in Err., v. Pennsylvania Railroad Company.

Where a brakeman knows that it is unsafe to couple a broken car in the ordinary manner, and yet persists in doing so and is killed, his representatives cannot recover against the railroad company operating the car.

(Argued February 2, 1888. Decided March 19, 1888.)

July Term, 1887, No. 125, E. D., before GORDON, Ch. J., PAXSON, STERRETT, CLARK, and WILLIAMS, JJ. Error to the Common Pleas of Montgomery County to review a judgment in favor of the defendant, in an action on the case. Affirmed.

This action was brought by Ida Barkdoll, widow of Reno L. Barkdoll, deceased, against the Pennsylvania Railroad Company, to recover damages for the death of her husband, alleged to have been caused by the negligence of the defendant.

The facts appear in the charge of the court by BOYER, P. J., which was in part as follows:

The first question for inquiry is as to whether the railroad company was guilty of that negligence which makes it accountable in such a case. You have had explained to you the manner of the death of Barkdoll, how that was caused by his getting between two cars; and how, in the attempt to couple them, he was crushed. The car with which he came in contact was a broken car. If that car, in that condition, had been run by the company in the ordinary course of traffic, without repair, I would have no hesitation in charging you that it was negligence on the part of the company to run such a car. [But the evidence is that it had lately been broken; or, at all events, we do not hear of its having been broken before that day when it is first brought to our notice.]    1

You have had described to you the condition in which it was; how it was so broken that in coming in contact with another car, with which it was about to be coupled, there was not sufficient space for any man to stand between the cars while in the act of coupling. To use such a car for ordinary purposes would have been negligence on the part of the company, because it would have increased the danger to its employees. But when a man enters the employment of a railroad company, he necessarily enters with the understanding that he must run the risks which arise from the ordinary course of business. The situation of a brakeman is always attended with some danger, but that danger every man who hires himself as a brakeman voluntarily undertakes to incur. A railroad company, on the other hand, is bound to furnish for the use of its employees cars which are in reasonable condition of repair, so that a person exercising reasonable care would escape injury in the handling of them, except under some extraordinary circumstances which could not be prevented. But all cars are liable to breakage. Accidents are continually happening by cars coming into collision with each other, and from other causes. And therefore brakemen must incur the risk which ordinary care will not prevent in the break-

age of cars; and [when a loaded car is broken, it is not negligence on the part of the railroad company to carry that car along to where it can be properly unloaded and sent to the workshop for repairs; and whatever danger might arise from that use of the car must be incurred by the employees.]2

Now, was their car used in the ordinary traffic of the company, or had it lately been broken, and was it, as the testimony has explained to us, only sent to have its load removed, and be taken to the shop?  The words, "for the shop," were written upon it, which is corroborative evidence that that was the intention.  [It was the duty of every employee who had anything to do with that car, to exercise more than ordinary caution.]3

Did Mr. Barkdoll exercise that caution?  [If the company had a right, as I have explained, to send that car from the place where it was to have it unloaded and sent to the workshop, then in that particular the company was not guilty of negligence.]4

Did it order Mr. Barkdoll to do anything in connection with that car, which subjected him to danger?  The testimony is that John Quinn, the assistant road master, called his attention and the attention of another brakeman, to the condition of that car, and cautioned them to be careful in handling it.  William E. Foster, the conductor of the train, testifies that he too called the attention of Barkdoll to the condition of that car, and warned him to be careful.  And Jeremiah Brown, one of the brakemen attached to the same train, says that he too conversed with Barkdoll upon the subject and that he too warned him to be careful; and when he saw Barkdoll enter between the cars for the purpose of coupling them, he remonstrated with him, and when Barkdoll told him that he should give the signal for backing the cars, so that he might couple it, he refused to do so; and then Barkdoll came out from between the cars, according to the testimony of Brown, and made the signal himself to the engineer to back the train, and then, when he had set the cars in motion, he entered again between them and attempted to affix the coupling; in which act he was caught and killed.

Now, whether the railroad company was guilty of some negligence or not, in the use of the car in the manner described, if Barkdoll was also guilty of any negligence in the manner in which he undertook to couple the cars, there can be no recovery in this case; for there can be no recovery where the person injured was himself guilty of contributory negligence.

It is for you to say whether it was contributory negligence on the part of Barkdoll, under the circumstances, after he had been warned by three different persons, to enter between the cars as he did and attempt the coupling. Could they have been coupled in any other way less dangerous? Brown says that when he became apprehensive of the danger which Barkdoll insisted upon incurring, he offered to couple the cars himself from the top, which offer Barkdoll rejected. Do you believe this testimony? If you do, then clearly Barkdoll was guilty of contributory negligence. The fact is for you. [The warning that Barkdoll received is testified to by three different witnesses, each corroborating the others. You have seen them upon the stand. You have heard them relate the facts to which they testify. There is no witness to contradict them.]5

Do you believe them or not? If you do not believe them; if you believe that the testimony in this case shows that Barkdoll was not guilty of contributory negligence; that he was careful; that he exercised prudence; and that the accident, with all his care, was inevitable by him—then the plaintiff would be entitled to recover, provided you also find that the railroad company was guilty of negligence in putting the car, under the circumstances, into the train which was to take it away. If you find that the railroad company was not guilty of negligence; or if, finding it guilty of negligence, you also find that Barkdoll was guilty of contributory negligence,—then the verdict must be in favor of the defendant.

The defendant presented, *inter alia*, the following points:

3. It was not negligence on the part of the defendant company to use the broken car, in the manner stated by the witnesses.

*Ans.* Under all the facts given in evidence upon the manner in which the car was used, I see no negligence on the part of the company. 6

On the trial plaintiff offered to prove in rebuttal that she was with her husband when he was dying and when he died, and that about an hour before his death, when he knew he was dying, he said to her that it was not his fault that he got hurt, that he could not help it. Objected to. Objection sustained.7

Verdict and judgment for defendant.

The assignments of error specified: (1–5) The portions of

the charge included within brackets; (6) the answer to defendant's point; and (7) the rejection of the offer of evidence in rebuttal, as above.

*H. U. Brunner* and *Geo. N. Corson,* for plaintiff in error.— It was negligence in the defendant receiving the car without repairing it, and it was clearly the duty of the defendant to have refused taking the car, without repairing the same. In the case of Gottlieb v. New York, L. E. & W. R. Co. 100 N. Y. 462, 3 N. E. 344, it was held that when cars come to a railroad company, which have defects visible, or discoverable by ordinary inspection, it must either remedy such defects, or refuse to take such cars.

*Charles H. Stinson,* for defendant in error.—The decedent had full knowledge of the condition of the car; indeed he first called attention to it, and after being fully warned of the danger, and advised how he could avoid it, nevertheless persisted and was killed by his own rash conduct—which clearly makes out a case of such negligence on his part as precludes a recovery by his representatives, and shows that the court dealt kindly towards the widow in submitting all the facts to the jury.

In Brossman v. Lehigh Valley R. Co. 113 Pa. 490, 57 Am. Rep. 479, 6 Atl. 226, it is held that when an employee "after having had the opportunity of becoming acquainted with the risks of his situation, accepts them, he cannot complain, if subsequently injured by such exposure. By contracting for the performance of hazardous duties he assumes such risks as are incident to their discharge from causes open and obvious, the dangerous character of which causes he has had opportunity to ascertain."

In Pittsburgh & C. R. Co. v. Sentmeyer, 92 Pa. 276, 37 Am. Rep. 684, the present chief justice said: "When men are hired, something must be predicated of their judgment and prudence; and hence when the employer furnishes them with tools and appliances which, though not the best possible, may, by ordinary care, be used without danger, he has discharged his duty and is not responsible for accidents." "A servant or employee assumes the risk of all dangers in his employment, however they may arise, against which he may protect himself by the exercise of ordinary observation and care."

Contributory negligence in any degree on the part of the plaintiff will prevent a recovery in an action for damages. Monongahela City v. Fischer, 111 Pa. 9, 56 Am. Rep. 241, 2 Atl. 87; Lehigh Valley R. Co. v. Greiner, 113 Pa. 600, 6 Atl. 246; Mansfield Coal & Coke Co. v. McEnery, 91 Pa. 185, 36 Am. Rep. 662; Green & C. Street Pass. R. Co. v. Bresmer, 97 Pa. 103; Marsden v. Haigh, 14 W. N. C. 526; Lehigh Valley Coal Co. v. Jones, 86 Pa. 432; Payne v. Reese, 12 W. N. C. 97;

PER CURIAM:

The principle of law, that the employer is bound to furnish his employees safe appliances and machinery with which to do their work, is undoubted. But it is just as certain that when the employee discovers that the machine about which he is employed is dangerous, and still continues to use it, he takes upon himself the risk of any accident which may result from its use. Now Barkdoll, being a brakeman, certainly knew that the broken car was unsafe to couple in the ordinary manner; hence, it was his business to refuse to put himself in a dangerous position, but having done so, he assumed the responsibility; and the court below properly refused to allow the consequence of the accident to be charged on the company.

The judgment is affirmed.